UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:15-cr-112-CLC-SKL |
| | ) | |
| JIMMY DEAN MILEN, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT & RECOMMENDATION

Before the Court is a motion to suppress filed by Defendant Jimmy Dean Milen ("Defendant") [Doc. 16] with a supporting memorandum [Doc. 17]. Defendant argues for suppression of (1) the statement he made to a law enforcement officer about having a gun in his truck because his Fifth Amendment rights and *Miranda v. Arizona*, 384 U.S. 436, 479 (1966) were allegedly violated, and (2) the gun seized during the warrantless search of his vehicle because the gun was not in plain view and his Fourth Amendment rights were allegedly violated. Plaintiff United States of America ("the government") filed a response in opposition to the motion arguing suppression is not warranted because (1) no Fifth Amendment or *Miranda* violation occurred as *Miranda* warnings were not required prior to asking Defendant if he had a weapon on his person or in his truck under the public safety exception, (2) no Fourth Amendment violation occurred as the search of the truck did not require a warrant or consent, and (3) even if a constitutional violation did occur, exclusion is not a proper remedy in this case [Doc. 22].

The motion to suppress was referred for a report and recommendation pursuant to 28

U.S.C. § 636(b) by standing order. An evidentiary hearing on the motion to suppress was held on February 18, 2016. After fully considering the evidence and argument, I **RECOMMEND** that Defendant's motion to suppress be **DENIED**.

## I.   FACTS

During the evidentiary hearing, the government offered the testimony of Polk County Sheriff's Deputy Cru Ross ("Deputy Ross"), the sole witness. As pertinent, Deputy Ross testified as follows.

The morning of February 19, 2015, Deputy Ross responded to a residence in a rural area of Old Federal Road with respect to a 911 sexual assault call. Deputy Ross interviewed the alleged victim, Alesia Cabrera. Deputy Ross observed that Ms. Cabrera had a "knot on her head" and "fresh bruising" and looked like she had been kicked and punched as she claimed. He saw that her face was puffy, swollen, and red, that her finger was bleeding where her fingernail had been ripped off, that she was shaking, upset and crying hysterically, and that she was not appropriately dressed to be outside in the cold winter weather. Deputy Ross saw nothing that made him question the veracity of Ms. Cabrera's report.

Ms. Cabrera reported she had been living with her boyfriend (Defendant) at his residence, which was about a ¼ mile away on Old Federal Road, and had run to the nearest neighbor's house to call for help when Defendant left the house that morning. She reported that Defendant had been on a drug binge for the past few days and was shooting up a white substance. She said Defendant had hit her, raped her, and had put a silver gun in her mouth "last night and into today." She further claimed that after Defendant assaulted her that morning he left in a white Ford F-350 truck that had "Milen" written on the back window. Ms. Cabrera also advised Deputy Ross that Defendant was a convicted felon.

Deputy Ross called for an ambulance for Ms. Cabrera and for assistance at the scene from detectives with the Polk County Sheriff's Department. Both the detectives and the ambulance quickly arrived and parts of the interactions at the neighbor's house are captured on video that was not introduced at the hearing.

After the ambulance left with Ms. Cabrera, the detectives left to go to Defendant's house to arrest him. Deputy Ross was still sitting in his patrol car at the neighbor's house when he received a call from the detectives stating that Defendant had just driven past them headed Deputy Ross's way on Old Federal Road. Deputy Ross, who lives in the area, was familiar with the truck and had seen it parked at Defendant's residence on several prior occasions. Deputy Ross observed the truck with "Milen Family Farms" written on the tinted back window travel by him. Deputy Ross immediately pulled out onto Old Federal Road, initiated his blue lights, and pulled up behind the truck with the intent to arrest Defendant. There is no video of the stop because Deputy Ross did not manually start his patrol car camera.

Defendant, who was the driver of the truck, turned off Old Federal Road and stopped on a dirt and gravel road about 100 yards from where Deputy Ross had been parked. Deputy Ross exited his patrol car with his firearm drawn and ordered Defendant to get out of his truck with his hands up. Defendant complied and walked to the rear bumper of his truck, where Deputy Ross met him. Deputy Ross asked Defendant's name, holstered his gun, placed Defendant under arrest for aggravated assault, handcuffed Defendant with his hands secured behind his back, and began to pat down Defendant for weapons. Without providing a *Miranda* warning and while still patting down Defendant, Deputy Ross asked Defendant if he had any weapons on him or in his vehicle. At the time he asked this question, Deputy Ross had patted down Defendant's waist area and confirmed there was no weapon there, but had not completed his pat down.

Deputy Ross asked this single question without raising his voice or threatening Defendant in any way. Defendant responded that there was a firearm under the driver's seat of the truck. Deputy Ross asked no further questions.

When Deputy Ross asked Defendant the question about weapons, Deputy Ross was concerned for officer and public safety. Deputy Ross could not see into the truck cab because he was standing at the rear of the truck and he could not see through the tinted truck windows. He could not see into the truck bed without bending over to look into the truck because the truck bed was shoulder height.[1] Ms. Cabrera mentioned no other person in her report that morning, but Deputy Ross did not know if Defendant was alone in the truck and he assumed for safety reasons that another person could be in the truck. Deputy Ross testified he "has to suspect the worst" for officer safety reasons. He was also concerned because he did not know on whose property they were stopped.

The detectives arrived and placed Defendant in the back of Deputy Ross's patrol car while Deputy Ross looked into Defendant's truck. Deputy Ross could not remember if Defendant had left the truck door open when he exited or whether he opened the door. After observing no other person was in the truck, Deputy Ross saw and seized a silver firearm from underneath the driver's seat of the truck. Deputy Ross did not see the firearm until he physically entered and searched the truck. Deputy Ross believed he could search the truck because he had both probable cause for a search and because he had officer safety concerns. Defendant was either being escorted to or had already been placed in Deputy Ross's patrol car when Deputy Ross started the search of the truck. Only about three minutes transpired from the time Deputy Ross ordered Defendant from his truck until Deputy Ross seized the gun. Deputy

---

[1] Several photographs of the truck and the gun were made Government's collective Exhibit 1. No other exhibits were introduced by either party.

Ross saw no evidence that Defendant was under the influence of drugs.

Defendant is charged in a single count indictment with possession of a firearm and ammunition by a convicted felon in violation of 18 U.S.C. § 922(g)(1).

## II.  ANALYSIS

Defendant seeks to suppress the statement he made to Deputy Ross regarding the firearm that was seized from his vehicle on February 19, 2015, as well as the firearm itself.[2]

### A. The Statement

It is undisputed that Deputy Ross did not provide *Miranda* warnings to Defendant prior to asking him if he had any weapons on his person or in his truck. The government admits Defendant was in custody for purposes of *Miranda* when Deputy Ross posed this question to Defendant,[3] but argues that Deputy Ross was not required to administer *Miranda* warnings prior to asking about weapons under the public safety exception.

The Fifth Amendment provides that a defendant cannot "be compelled in any criminal case to be a witness against himself." *United States v. Protsman*, 74 F. App'x 529, 532 (6th Cir. 2003) (citing U.S. Const. amend. V.). In *Miranda*, the Supreme Court upheld a suspect's constitutional right against compelled self-incrimination and established that no criminal suspect may be subjected to custodial interrogation without first being advised of the right to have counsel present and the right to remain silent. 384 U.S. at 478-79. "To ensure compliance with this rule,

---

[2] Defendant has not challenged that there was probable cause to stop his vehicle and arrest him. The government has conceded that Deputy Ross did not see the firearm in plain view before he physically entered the truck.

[3] *Miranda*'s procedural safeguards apply to suspects only if they are subjected to a custodial interrogation, but regardless of whether formal criminal proceedings have begun. *United States v. Ray*, 803 F.3d 244, 279 n.12 (6th Cir. 2015); *see also Hoffner v. Bradshaw*, 622 F.3d 487, 511 (6th Cir. 2010). "A suspect is 'in custody' for *Miranda* purposes if there has been a 'formal arrest or restraint on freedom of movement.'" *Ray*, 803 F.3d at 279 n.12 (quoting *Mason v. Mitchell*, 320 F.3d 604, 631 (6th Cir. 2003) (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977))).

incriminating statements elicited during custodial interrogation prior to *Miranda* warnings cannot be admitted at trial." *United States v. Malcolm*, 435 F. App'x 417, 420 (6th Cir. 2011) (citation omitted).

"*Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent." *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980); *see also United States v. Collins*, 683 F.3d 697, 703 (6th Cir. 2012) (holding that "'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." (quoting *Innis*, 446 U.S. at 300-01)); *United States v. Chalmers*, 554 F. App'x 440, 446 (6th Cir. 2014) (holding "[v]olunteered statements of any kind are not barred by the Fifth Amendment") (quoting *Miranda*, 384 U.S. at 478)). However, there are exceptions to *Miranda*. As pertinent here, "when officers ask 'questions necessary to secure their own safety or the safety of the public' as opposed to 'questions designed solely to elicit testimonial evidence from a suspect,' they do not need to provide the warnings required by *Miranda*." *United States v. Williams*, 483 F.3d 425, 428 (6th Cir. 2007) (citing *New York v. Quarles*, 467 U.S. 649, 659, (1984)).

In *Quarles*, "the Supreme Court held that 'overriding considerations of public safety' could justify a failure to provide *Miranda* warnings before initiating custodial interrogation." *United States v. Hodge*, 714 F.3d 380, 385 (6th Cir. 2013). "Such questioning is permissible when 'officers have a reasonable belief based on articulable facts that they are in danger.'" *Id*. (quoting *United States v. Talley*, 275 F.3d 560, 563 (6th Cir. 2001)). The exception applies in a "situation in which police officers ask questions reasonably prompted by a concern for public safety" or the safety of the officer. *United States v. Kellogg*, 306 F. App'x. 916, 924 (6th Cir. 2009) (quoting

6

*Quarles*, 467 U.S. at 656). The "evaluation takes into consideration a number of factors, which may include the known history and characteristics of the suspect, the known facts and circumstances of the alleged crime, and the facts and circumstances confronted by the officer when he undertakes the arrest." *Williams*, 483 F.3d at 428. The "availability of [the] exception does not depend upon the motivation of the individual officers involved." *Quarles*, 467 U.S. at 656.

For the public safety exception to apply in a situation involving a firearm, the Sixth Circuit has held there must be sufficient evidence to show that the officer had cause to believe:

> (1) that the defendant might have (or recently have had) a weapon, and (2) that someone other than police might gain access to the weapon and inflict harm with it. The public safety exception is applied if and only if both of those two conditions are satisfied and no other context-specific evidence rebuts the inference that the officer reasonably could have perceived a threat to public safety.

*Kellogg*, 306 F. App'x at 924 (quoting *Williams*, 483 F.3d at 428).

The first prong of the public safety exception test is easily met as Deputy Ross had every reason to believe Defendant might have (or recently have had) a weapon based on Ms. Cabrera's report that Defendant stuck a gun in her mouth earlier that morning. During the hearing, Defendant essentially conceded this point.

The second prong of the test is a closer call because Deputy Ross asked about a weapon on Defendant's person *or* in his truck. Defendant focuses on the reasonableness of the pre-*Miranda* question about a weapon in the truck. Deputy Ross credibly testified that he asked about a weapon in the truck because of his concern for officer and public safety since he could not see if another person was in the truck bed or cab and he did not know on whose property they were stopped. However, Deputy Ross articulated no direct reason to suspect that someone was in the truck such as hearing or seeing another person. He instead indicated he took the precaution of

assuming "the worst" because he could not see into the truck and did not know on whose property they were stopped.

I **FIND** Deputy Ross credibly testified his question was reasonably prompted by a concern for public and officer safety. As argued by the government, traffic stops have been recognized as being inherently dangerous. *See Arizona v. Johnson*, 555 U.S. 323, 330 (2009) ("[T]he Court has recognized that traffic stops are 'especially fraught with danger to police officers.'" (quoting *Michigan v. Long*, 463 U.S. 1032, 1047 (1983))). In addition, Deputy Ross was aware that Ms. Cabrera accused Defendant of being a felon who had been engaging in repeated and violent sexual assaults while using drugs and in possession of a firearm. Deputy Ross believed Ms. Cabrera's report to be entirely credible. In the context of this case and taking into consideration the "known history and characteristics of the suspect, the known facts and circumstances of the alleged crime, and the facts and circumstances confronted by [Deputy Ross] when he undert[ook] the arrest[,]" I **FIND** Deputy Ross had cause to believe someone other than the police might access the gun and inflict harm with it. There is no indication that Deputy Ross's question was designed solely to elicit testimonial evidence from Defendant. *Compare Kellogg*, 306 F. App'x at 924 (finding that the second prong had not been met because the defendant was already handcuffed, all the occupants were out of the duplex, and there was no reason to believe the gun would be "immediately accessible" to any individual in the duplex other than police).

There was no context-specific evidence presented that rebutted the inference that Deputy Ross reasonably perceived a threat to officer or public safety. Courts (including the Supreme Court in *Quarles*) have upheld reliance on the public-safety exception even where a defendant was in handcuffs.[4] *Quarles*, 467 U.S. at 652; *United States v. Williams*, 272 F. App'x 473, 475-78

---

[4] The Court notes that Defendant is significantly larger than Deputy Ross.

(6th Cir. 2008) (upholding application of public safety exception where defendant was in handcuffs when officer asked him "whether there were any weapons in the house.").

Alternatively, and even if it is determined that Defendant's statement should be suppressed contrary to my recommendation, Defendant's argument that the gun itself should be suppressed as "fruit of the poisonous tree" fails. "The Fifth Amendment's protection against compelled self-incrimination, from which *Miranda*'s warning requirement is derived, prevents the government from introducing unwarned statements against a criminal defendant at trial, but it does not apply to physical evidence." *United States v. Reese*, 509 F. App'x. 494, 503 (6th Cir. 2012), *cert. denied*, — U.S. —, 133 S.Ct. 2780 (2013) (internal citation omitted). "The *Miranda* rule protects against violations of the Self–Incrimination Clause, which, in turn, is not implicated by the introduction at trial of physical evidence resulting from voluntary statements." *Id.* at 503 (quotation marks and citations omitted). *See also United States v. Lewis*, 110 F. App'x 569, 572 (6th Cir. 2004) ("The police's failure to issue Lewis a *Miranda* warning thus does not prevent the admission into evidence of the subsequently discovered firearm--the physical, nontestimonial fruit of his voluntary statements.").

I **FIND** that Defendant's statement was voluntary. *See Reese*, 509 F. App'x at 501 (finding the fact that defendant was handcuffed did not make his statement involuntary); *United States v. Miller*, 48 F. App'x 933, 952 (6th Cir. 2002) (finding that a statement was voluntary despite the fact defendant was handcuffed and surrounded by police officers). Thus, even assuming the *Quarles* public safety exception does not apply, the firearm itself is admissible at trial and not subject to suppression if the truck was properly searched without a warrant or consent.

## B. Search of the Truck

At the hearing, Defendant acknowledged that if *Miranda* was not violated by Deputy

9

Case 1:15-cr-00112-CLC-SKL   Document 30   Filed 03/03/16   Page 9 of 13   PageID #: 326

Ross's question, then the statement by Defendant that he had a gun in the truck provided probable cause for the ensuing search of the truck. Although I have concluded *Miranda* was not violated, I will address some of the alternative arguments of the government regarding the search. In summary, I **FIND** the police had probable cause to search the truck with or without Defendant's statement under the totality of the circumstances.

In *Arizona v. Gant*, 556 U.S. 332, 351 (2009), the Supreme Court determined that law enforcement officials may search a vehicle incident to a lawful arrest "only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest."[5] Because Defendant was secured away from the truck at the time of the search, the first justification for a search of the truck incident to Defendant's lawful arrest is not applicable. As to the second justification, the government argues Deputy Ross had every reason to believe the truck would contain evidence of the offenses allegedly committed against Ms. Cabrera, namely the gun used in the aggravated assault. The government argues the "reasonable to believe" standard applied in *Gant* requires less than probable cause because otherwise *Gant*'s evidentiary rationale would merely duplicate the "automobile exception," which the Court specifically identified as a distinct exception to the warrant requirement. *Id*. at 347 (citing *United States v. Ross*, 456 U.S. 798, 820-21 (1982)). The government argues the "reasonable to believe" standard is akin to the "reasonable suspicion"

---

[5] A search-incident-to-arrest exception to the warrant requirement allows police to search for and remove any weapons that might pose a danger to officer safety, and the exception allows police to search an arrestee to prevent the concealment or destruction of evidence. *Chimel v. California*, 395 U.S. 752, 762-63 (1969). In *Gant*, the Supreme Court reexamined the search incident to arrest doctrine in the context of the search of an arrestee's vehicle and returned its focus to *Chimel*-like justifications for the exception. The Court limited its prior holding in *New York v. Belton*, 453 U.S. 454 (1981), and redefined the parameters of such vehicle searches incident to arrest, finding that the area within which the arrestee might gain possession of a weapon or destructible evidence defines the boundaries of the exception. *Gant*, 556 U.S. at 341-44.

standard required to justify a *Terry* search.

"Under the automobile exception to the warrant requirement, 'an officer may search a readily mobile vehicle without a warrant if he has probable cause to believe that the vehicle contains evidence of a crime.'" *United States v. Johnson*, 707 F.3d 655, 658 (6th Cir. 2013) (quoting *United States v. Redmond*, 475 F. App'x 603, 607 (6th Cir. 2012)). *See also, Carroll v. United States,* 267 U.S. 132, 149 (1925) ("[I]f the search and seizure without a warrant are made upon probable cause, that is, upon a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction, the search and seizure are valid."). In *United States v. Galaviz*, the Sixth Circuit elaborated on the mobility factor of the automobile exception to the warrant requirement:

> The automobile exception allows officers to search a vehicle without a warrant if they have probable cause to believe that the vehicle contains evidence of a crime. This exception has traditionally been based on the ready mobility of the automobile, which created an exigency sufficient to excuse failure to obtain a search warrant. Recent cases have clarified that the automobile exception need not rest on an independent showing of exigency, because even in cases where an automobile was not immediately mobile, the lesser expectation of privacy resulting from its use as a readily mobile vehicle justified application of the vehicular exception.

645 F.3d 347, 355 (6th Cir. 2011) (citations, quotations and alterations omitted).

"If there is probable cause to believe a vehicle contains evidence of criminal activity," officers may without a warrant search "any area of the vehicle in which the evidence might be found." *Gant*, 556 U.S. at 347 (citing *United States v. Ross*, 456 U.S. 798, 820-21 (1982)); *see also United States v. Lumpkin*, 159 F.3d 983, 986 (6th Cir. 1998) ("Under the automobile exception to the warrant requirement, law enforcement officers may search a readily mobile vehicle without a warrant if they have probable cause to believe that the vehicle contains evidence

11
Case 1:15-cr-00112-CLC-SKL   Document 30   Filed 03/03/16   Page 11 of 13   PageID #: 328

of a crime."). "Probable cause is defined as 'reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion.'" *United States v. Ferguson*, 8 F.3d 385, 392 (6th Cir. 1993) (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)). "Probable cause exists where 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Wright*, 16 F.3d 1429, 1437 (6th Cir. 1994) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). The determination is a "commonsense, practical question" based upon the totality of the circumstances. *Gates*, 462 U.S. at 230–31. "This totality of the circumstances analysis includes a realistic assessment of the situation from a law enforcement officer's perspective," taking into account law enforcement training and experience. *Ferguson*, 8 F.3d at 392.

Even without considering Defendant's statement that a gun was in the truck, and even with applying the more stringent probable cause standard, I **FIND,** under the totality of the circumstances, that Deputy Ross properly searched the truck without a warrant or consent because it was reasonable to believe the truck contained evidence of the offense of Defendant's arrest and because there was probable cause to believe the truck contained evidence of Defendant's alleged criminal activity.[6]

Given this finding, it is not necessary to address the "good faith" argument raised by the government.

---

[6] Indeed, as previously noted, Defendant has not challenged that the information known to law enforcement officers provided probable cause for his stop or his arrest.

### III. CONCLUSION

For the reasons stated above, I **RECOMMEND**[7] that Defendant's motion to suppress [Doc. 16] be **DENIED** in its entirety.

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[7] Any objections to this report and recommendation must be served and filed within 14 days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 59(b) of the Federal Rules of Criminal Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

13

Case 1:15-cr-00112-CLC-SKL   Document 30   Filed 03/03/16   Page 13 of 13   PageID #: 330